# AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Barry Hyland, a Special Agent with the U.S. Department of Labor, Office of Inspector General, Office of Labor Racketeering and Fraud Investigations, being duly sworn, depose and state as follows:

## I. INTRODUCTION

1. I am a Special Agent with the U.S. Department of Labor, Office of Inspector General, Office of Labor Racketeering and Fraud Investigations ("OLRFI"). I have been employed by the OLRFI since October 2007 and was previously employed by the Internal Revenue Service-Criminal Investigation (IRS-CI) from 2005 until October 2007. I am presently assigned to the Cleveland Field Office, and during my employment with OLRFI I have participated in numerous investigations concerning violations under Title 29 and Title 18 of the United States Criminal Code. I have participated in several criminal investigations involving unemployment insurance (UI) fraud schemes.

## II. PREMISES TO BE SEARCHED

2. Your affiant submits that there is probable cause to believe that violations of: 18 U.S.C. § 1341 (Mail Fraud), 18 U.S.C., § 1343 (Wire Fraud), and 18 U.S.C § 1028A(a)(1) (Aggravated Identify Theft) (the "TARGET OFFENSES") have been committed, and further that there is also probable cause to believe that evidence, fruits and instrumentalities, as described in Attachment B related to said offenses presently are located at the premises described in Attachment A.

## III. PURPOSE OF AFFIDAVIT

3. Your affiant is currently investigating Kennard BERTS ("BERTS"), Darnell NASH ("NASH"), also known as Slayana BERTS, Justin DAVIS ("DAVIS"), also known as Queen Bee, and Dwayne BUCHANNAN ("BUCHANNAN"), as well as other potential co-conspirators, for

1

potential Title 18 violations as listed above. Investigation since October 2012, including analysis of reports provided by the California Employment Development Department, the Ohio Department of Job and Family Services, the Indiana Department of Workforce Development, the Texas Workforce Commission, and the Kansas Department of Labor, reviews of documents obtained through trash pulls, reviews of evidence previously seized during the execution of a search warrant executed by the Cleveland Heights Police Department on November 1, 2012, reviews of banking records, and interviews of witnesses, resulted in the grand jury returning a 33 count Indictment against NASH, BERTS, DAVIS and BUCHANNAN, on October 22, 2013 which charges violations of Title 18, U.S.C., Sections 1349 (conspiracy), 1341 (mail fraud), 1343 (wire fraud), 1957 (money laundering) and 1028A(a)(1) (aggravated identity theft).

4. The facts and information contained herein are based on my personal knowledge and experience, that of other agents and investigators, interviews, surveillance, and review of records and documents. Since this affidavit is being submitted for the limited purpose of supporting the application in this matter, I have not included each and every fact known to me concerning this investigation, but rather only the facts necessary to establish the probable cause for the issuance of the search warrant.

## IV. ITEMS TO BE SEIZED

5. A list of specific items and information to be seized and/or disclosed is included in Attachment B, which is incorporated herein.

## V. SUMMARY OF PROBABLE CAUSE

6. A search warrant was executed by the Cleveland Heights Police Department on November 1, 2012, at the condominium located at 3193 Euclid Heights Blvd, Cleveland, Heights, Ohio. Individuals present during the search warrant included NASH, BERTS, DAVIS, BUCHANNAN,

2

REYNOLDS, MORRIS SANDERS ("SANDERS"), LESLEY SMITH ("SMITH"), MAURICE GOFF ("GOFF"), and QUINTON HARRIS ("HARRIS").

7. The following computers were seized from the condominium: HP Laptop ID: 00196-251-043-073; HP Laptop ID: 00196-187-053-899; HP Laptop ID: 00196-236-845-796; Apple Laptop ID: CO2HG2F4DV33; Apple Monitor/CPU Combo ID:CD2HK3GSDHJP; Apple iPad 16GB ID: DMQJ3CKBDJ8T; Apple iPad 16GB ID: DMQH9KLSDKPH; and Dell Notebook with "Property of Cleveland Hts University Schools" printed on the notebook ID:45386.

8. Various records, including, but not limited to, notebooks, e-mail printouts and pieces of paper were seized which listed over six hundred (600) different SSN's.

9. Numerous Gmail (an Internet based electronic mail provider) printouts containing names of individuals along with their SSN's, DOB's and additional information including employment status, number of dependents, and whether the individuals have government housing or food stamps, were also seized during the search warrant. Some of the Gmail printouts also reflect a Yahoo! e-mail account, truestart91@yahoo.com, and it appears that the emails in question were sent to the Yahoo! Account from the Gmail account.

10. On December 6, 2012, and on December 7, 2012, Cleveland Heights Police Sergeant Chris Skok and your affiant interviewed a Source of Information (SOI). The SOI stated NASH has a "business" called the Full Circle Fund; NASH told the SOI that it was a nonprofit business. The SOI said NASH had employees working for him, all of whom lived at the same condominium as NASH at 3193 Euclid Heights Blvd, Cleveland Heights, Ohio.

11. The SOI said NASH has prepared Full Circle Fund "flyers" or handouts which are distributed throughout the Cleveland, Columbus, and Cincinnati, Ohio areas.

12. The SOI said people receiving the flyers called in and provided their personal information including names, SSN's and DOB's, which information was, in turn, used by NASH to fraudulently file either unemployment insurance claims or claims for worker's compensation benefits; the SOI could not recall which type of specific benefit was used by NASH. The SOI said NASH only permitted certain employees to enter information into the computer to file the fraudulent UI benefit claims.

13. The SOI said NASH also entered information into the computer obtained from callers responding to the flyers. NASH sent e-mails to NASH's other employees, including SANDERS, BERTS and DAVIS, containing lists of SSN's, along with instructions concerning what to do with the information. The SOI said these same employees also entered information obtained from the individuals responding to the flyers into the computers.

14. The SOI said NASH had various laptop computers at the condominium that were used for "working purposes only." The only individuals that used the laptops were NASH and his employees.

15. BERTS said DAVIS and SANDERS also used the computers to file fraudulent claims for UI benefits.

16. Affiant and other law enforcement officers participating in this investigation have also interviewed JUSTIN DAVIS and KENNARD BERTS, co-defendants charged in Case No. 1:13CR467. Information provided by DAVIS and BERTS corroborates the information provided by the SOI regarding the Full Circle Fund, the creation and distribution of the Full Circle Fund Flyers, the collection of personal identifying information from unsuspecting victims, and the use of that personal information in connection with the filing of fraudulent unemployment insurance claims. Additionally, evidence concerning the fraud scheme and the use of computers in

connection with the scheme by NASH and others occupying the premises was seized during the execution of a State of Ohio search warrant at 3193 Euclid Heights Blvd, Cleveland Heights, Ohio, in October 2012, including printed email messages relating to the fraud scheme containing victims' personal identifier information (including Social Security account numbers), names of the fictitious companies, and mail received from the various state unemployment offices addressed to the victim "claimants,"

17. When interviewed by affiant and another agent, JUSTIN DAVIS said he answered the phones from individuals responding to the Full Circle Fund Flyers and recorded the information in either in a notebook or on the computer. DAVIS never e-mailed the information he recorded from the callers to NASH or anyone else. DAVIS said NASH copied and pasted the information DAVIS entered into the computer and e-mailed the information to himself, but DAVIS does not know to which e-mail account NASH sent the information.

18. DAVIS said Juan SANDERS spent multiple hours working on the computer relating to the Full Circle Fund and the fraudulent UI benefit activity.

19. On February 4, 2014, NASH was arrested by agents of the United States Secret Service ("USSS") at the Holiday Inn Express located at 8956 Madison Blvd, Madison, Alabama 35758. At the time of NASH's arrest, NASH was in hotel room 209 along with Gil REYNOLDS and other unidentified individuals. Hotel room 209 and room 215 at the Holiday Inn Express were both registered to REYNOLDS and a business name "Chase Farms Group." At the time of NASH's arrest, various documents, were found, along with one silver and black Apple IPhone Model: A1533; FCC ID: BCG-E2642A; IC: 579C-E2642B; IMEI: 358754052465135, one white and silver Apple IPhone Model:A1533; FCC ID: BCG-E2642A; IC: 579C-E2642B; IMEI: 358754051043271, one silver Apple MAC Book Pro Model: A1278; S/N: CPFLQ5B3DTY3, one

5

silver Apple Mac Book Pro Model: A01286; S/N: C02K20QXDV33, and one Apple power adaptor were inside the hotel room. NASH acknowledged that these items were his personal property and the items were subsequently seized by the USSS and transferred to the USSS Cleveland Field Office. At the time of arrest, NASH produced a South Carolina Driver's License in the name of Dahlia Canay Harrison; however during the booking process, NASH acknowledged his true identity. Your affiant reviewed the aforementioned documents that were located and seized from the Holiday Inn Express, room 209, at the time of NASH's arrest. Included in the documents seized from the hotel room were additional Full Circle Fund flyers, which state "Need Help?" listed at the top and offer various services, some of which include "Rent/Room & Board Payments, Utilities, Food Vouchers, Clothing Vouchers, Employment Training/Placement Services, Computer Grants/Computer Training, Micro Loans ($2,000 maximum), Furniture Vouchers." Also on the flyer the phone number 1-866-559-5735 is listed with "Call now for an application."

20. Also included in the items found in the hotel room were documents with names of individuals with SSN's, DOB's and phone numbers; multiple applications for All Kids Children's Health Insurance Program through InsureAlabama.org; handwritten notes with circlefund216@gmail and a list of names and what appears to be DOB's; two e-mail printouts with the e-mail address reynolds_jerrell@yahoo.com one of which lists recipient ID, names and addresses of individuals and another that lists names, SSN's, what appears to be DOB's and various health care facilities; a fax confirmation sheet from Chase Farm Group/Chartis Group, 1320 Main St,. Ste. 300, Columbia, SC 44120, and the phone number 866-559-5735; an agreement between REYNOLDS and the Arkansas Department of Human Services to participate in the Arkansas Medical Assistance Program; and copies of birth certificates and social security cards.

21. Your affiant viewed the Instagram account for "yanna_prima_donna." The name "Slayana" is listed on the screen under the account name. Pictures posted on this Instagram account match the appearance of NASH. Instagram is an on-line social media website which permits users to share photos and comments on-line via the Internet.

22. Also included in the documents found in the hotel room was a notebook with what appears to be a design of a human face on the front of the notebook. The design on the cover of the notebook matches a photo posted on the Instagram account belonging to yanna_prima_donna. The date of the posting is January 18, 2014, and the photo appears to be NASH holding the notebook and below the photo "All my secrets" is listed and another photo with "Keep me journal" listed below the photo. On the same Instagram account there is a posting on January 17, 2014, that states "Who know how too (sic) do medical billing...I'm paying top $$$" and another posting on the same date states "Who do medical billing hmu???" Inside this notebook found in the hotel room there are lists of names and what appears to be DOB's; an Oklahoma Health Care Authority New Provider Electronic Enrollment Cover Sheet listing REYNOLDS as the provider with a phone number of 866-559-5735; addresses for women's shelters and a day center for the homeless; Full Circle Fund Flyers; a letter from the Alabama Medicaid Agency addressed to REYNOLDS dated December 18, 2013 with a PIN number to access the Alabama Medicaid secure website; handwritten notes with a list of questions including "are there children in the home", are you currently homeless", "unemployment?", "are you behind or pass due on any utilities?"

23. Two of the applications for All Kids Children's Health Insurance Program through InsureAlabama.org that were in the documents retrieved from the hotel room are filled out and list the names K.L. and J.A. On the application for K.L., the home address is listed as "Homeless Pregnant Mother" and a SSN and DOB is listed. The e-mail listed on the application is

7

intake@thechasefarmsgroup.org and a phone number 866-559-5735 is listed. The application has C/O CFG Crisis Centers listed on it and the mailing address listed is for the CFG Crisis Center located in Birmingham, Alabama. A signature purportedly of K.L. is on page eleven of the application with a date of January 10, 2014. On the bottom of the application, handwritten notes state "Please forward all notices and correspondence to Attention CFG Crisis Centers 2145 Highland Ave, Birmingham, AL 35205. This is the crisis centers confidential forwarding address all Medicaid –related correspondence will be forwarded by certified mail to survivors at our safe houses, by crisis centers, and shelters. Any questions please call me at 866-559-5735, ext. 203 or email me at Elisesuschan@thechasefarmsgroup.org." Another application is for J.A. and includes the same information as on the K.L. application and also a signature purportedly of J.A. is on page eleven of the application with a date of January 10, 2014.

24. Your affiant interviewed both K.L. and J.A. prior to the October 22, 2013 Indictment of NASH. Both K.L. and J.A. said they called the number for the Full Circle Fund and were seeking various types of assistance including financial assistance. Both individuals were asked for and provided their personal information to an individual with the Full Circle Fund. K.L. and J.A. said they never received any type of financial assistance after providing their information to the Full Circle Fund. Furthermore, K.L. and J.A. said they have never heard of or worked for the employers they are listed as being employed by. Unemployment insurance compensation benefits were subsequently paid to the employees of these employers; however, K.L. and J.A. stated they have never collected unemployment insurance benefits.

## VI. SEARCH PROCEDURE

25. Based upon my training, experience, and through consultation with Special Agents trained in computer forensics, that computer hardware, software, documentation, passwords and data

8

security devices may be important to a criminal investigation in two distinct and important respects: (a) the objects themselves may be instrumentalities, fruits or evidence of crime; and/or (b) the objects may have been used to collect and store information related to the crimes (in the form of electronic data).

26. Computers, computer storage devices, and other electronic storage media can store the equivalent of hundreds of thousands of pages of information. The user can store files in various locations and even provide deceptive names to the files. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take weeks or months, depending on the volume of the data stored, and it would be impractical to attempt this kind of data search on-site.

27. Searches and seizures of evidence from computers and other electronic storage media commonly require agents to download or copy information from the computers and their components or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

   i. Computer storage devices (such as hard drives, diskettes, thumb drives, CDs, DVDs, etc.) can store the equivalent of hundreds of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

9

    ii. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

28. In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU). In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

29. Furthermore, because there is probable cause to believe that the computer(s), all storage and/or peripheral devices associated therewith, and all other electronic storage media also contain evidence, fruits or are instrumentalities of said crimes, they should also be seized and searched.

## VII. CONCLUSION

30. Based on my knowledge and experience as a Special Agent and the facts and circumstances presented in this affidavit, there is probable cause to believe that NASH, BERTS, DAVIS, BUCHANNAN and others have committed mail fraud in violation of 18 U.S.C. §1341, wire fraud in violation of 18 U.S.C., Section 1343, and aggravated identify theft in violation of 18 U.S.C §

1028A(a)(1). Furthermore, there is probable cause to believe evidence, fruits and instrumentalities of these crimes are located in the items described in Attachment A. I respectfully request that a search warrant be issued allowing agents to search information stored on the items described in Attachment A, and following the search procedure described in Attachment B to seize the items described in Attachment B, all of which constitute evidence of the TARGET OFFENSES.

## VIII. REQUEST FOR SEALING

31. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their disclosure may seriously jeopardize that investigation.

Barry D. Hyland, Special Agent
U.S. Department of Labor
Office of Inspector General

Subscribed and sworn before me this 25th day of February, 2014.

KENNETH S. McHARGH
United States Magistrate Judge